## NEW-YORK COMMON PLEAS.

### John Hicks agt. Jacob Wirth.

An endorser of a note is not an assignor of a' thing in action, within the mean-
ing of § 399 of the Code.
When such endorser is examined as a' witness, the defendant cannot, under that
section, be examined in his own behalf.

*General Term, February,* 1855.
Before Judges INGRAHAM, DALY, and WOODRUFF.
On appeal from the marine court.

This action was brought to recover the amount of a promis-
sory note, made by one Kirk, payable to the defendant's order,
and endorsed by him and one Allen. Allen was examined as
a witness on the part of the plaintiff, and the defendant was
offered as a witness on his own behalf, on the ground that the
endorser of a note is an assignor of a chose in action within
the meaning of § 399 of the Code of Procedure. The plaintiff
objected, and the court admitted the defendant to testify, and
rendered judgment in his favor.

The plaintiff appealed to this court.

ADAMS & LUCKEY, *for appellant.*
JOHN ANDERSON, jr., *for respondent.*

By the court—INGRAHAM, First Judge. The plaintiff sues
the defendant as the first endorser of a promissory note, made
by Kirk to the defendant, by him endorsed to Matthew Allen,
and by Allen to the plaintiff. Upon the trial of the cause,
Allen was examined as a witness for the plaintiff; and the
defendant then offered himself as a witness, and was admitted
upon the ground that Allen was an assignor of a thing in action,
and the defendant therefore could be examined in his own be-
half under § 399 of the Code.

The plaintiff excepted to the admission of the defendant as

a witness. The propriety of admitting the defendant to testify in his own favor, depends upon the question whether or not the endorser of a promissory note is an assignor within the meaning of § 399 of the Code.

We are referred to the decisions made in the supreme court on this point, sustaining the ruling in the court below, as conclusive upon the question.

There are three cases reported, in which this point has been discussed in that court; and if the decisions had been clearly in favor of such a construction of the statute, I should feel almost bound to adopt it, even if, in my own judgment, I should be led to an opposite conclusion. But there is not, in those decisions, any such exposition of the true meaning of this section. The first case in which such a decision was made was that of *Bump* agt. *Van Arsdale*, (11 *Barb.* 634.)

In that case, at general term, the doctrine was distinctly stated by the whole court, that an endorser of a negotiable note was an assignor within the meaning of § 399 of the Code, and that the defendant could be examined in his own behalf.

This case was followed by that of *Gagoe* agt. *Allen*, (16 *Barb.* 580,) in which Mr. Justice Strong not only doubts the propriety of the decision in *Bump* agt. *Van Arsdale*, but rather applies that provision of the Code to persons who assign a contract or demand, which, at common law, could not be so assigned as to entitle the assignee to maintain a suit at law thereon in his own name. He adds, "Perhaps it should not have a more extended application." In that case, part of the cause of action was a note not negotiable; and, in regard to that note, the payee was held to be, within the provisions of the Code, an assignor, and the decision was made upon that ground.

The last case is that of *Potter* agt. *Bushnell*, (10 *How. Pr. Rep.* 94,) in which Mr. Justice Harris shows, with much force, that this provision of the Code is not applicable to an endorser of negotiable paper. He says, that if the question had been presented without the weight of previous authority, he should have been inclined to construe the term [assignor] as applica-

Hicks agt. Wirth.

ble only to cases where a right to maintain an action has been given to the assignee.

Again : " The word, in its popular sense, is confined to those who transfer a right of action not transferable at common law. Such I believe to have been the sense in which the legislature used the term in the Code.   I do not think it was intended to prohibit the unrestricted examination of any witness who would have been competent at common law."

In these views, also, his brethren, holding the general term with Mr. Justice HARRIS, concurred ; but they yielded .their own judgment, and adopted the opposite conclusion rather than establish a conflicting precedent.

There is no controlling force, therefore, in these decisions, where it appears that six of nine judges, who concurred in pronouncing them, were not in favor of the construction of the Code as adopted in the case of *Bump* agt. *Van Arsdale ;* but on the contrary, that a majority of these judges were of the opinion that the endorser of a negotiable note was not referred to by the term assignor of a thing in action.

I feel, therefore, less hesitation in adopting a different construction of this provision of the Code, and in following what has, I believe, been the decisions of the judges in this district at *nisi prius*, where the question has arisen, as it frequently has, since the first of those decisions was made.

But I am prepared to go even further, and dissent from the admission of these cases, that an endorser is to be considered an assignor of a thing in action.   The note is a promise to pay to the person named.therein, or to his order, a certain sum of money.   His endorsement is a draft or order on the maker to pay it to another.   The legal construction put upon such an endorsement is not that it is an assignment of a claim against the maker, but an order or draft upon the maker for the money he has agreed to pay ; and it is upon this legal fiction that the law merchant places the liability of the endorser, if the maker does not pay the note at maturity.   Such a liability never attaches to a mere assignor.   The act of endorsing, Chitty says, is equivalent to that of a new drawing.  (*Chitty on Bills*, 220.)

The endorsement of a bill or note is not a mere transfer of the paper; it is a new and substantial contract, (6 *Cranch*, 222;) it is, in fact, the same as a new bill drawn by the endorser on the acceptor (or maker) in favor of the endorsee. (4 *Mass*. 258.)

The endorsement of the note, strictly speaking, is the order or appointment, by the payee to the maker, of a person to whom, according to the maker's contract, he has agreed to pay the amount as promised; and although it virtually carries with it a right of action against the maker, yet that right is rather for a breach of the original contract, viz., a promise to pay to the order of the payee, than from any actual assignment of a claim against the maker.

There may be cases where no such transfer ever, in fact, takes place; and yet, under this ruling of the court below, the party whose name is on the back of a note would be in all cases excluded from being a witness, except upon condition of admitting a defendant as a witness in his own behalf. Take the case of a note endorsed for the accommodation of a maker, and put into circulation by him. Here was no assignment by the payee. The note never had vitality in the hands of the payee or the maker. No assignment had taken place or could be presumed, because there was nothing to assign. Until the maker passed it away to the holder, it was nothing more than blank paper. In such case, the endorser can in no sense be termed an assignor of a claim against the maker. He never had any to assign.

Other instances might be given to show that the character of an endorser of a negotiable note is not that of an assignor of a thing in action; but rather of one directing to whom the maker shall pay the amount of the note, according to his promise, or of one drawing upon the maker for such amount; and that the right of action which passes to the endorser is the necessary consequence of the contract of the maker, rather than any assignment of a right of action by the payee.

The endorsement of the note is an appointing the contents thereof to be paid to some third person. The contract which

the maker enters into with the payee, is to pay him or such person as he or his endorsee, or any endorser's endorsee shall direct, and there is consequently as much privity between the last endorsee and the drawer, and between him and the precedent endorsees, as there is between the drawer and the payee. The endorsement is an incident, and a part of the original contract."

In many of the cases, it is true, that an endorsement is spoken of as assigning or transferring the note, and that the effect of the endorsement is to vest, in the endorsee, the rights of the endorser; yet, I apprehend that such expressions are not intended to place the endorser in the character of an assignor, but to describe the necessary consequence of appointing the payment of the money to a third person to be, to vest in him all the rights which such payee had, to compel payment himself. The case of *Evarts et al.* agt. *Palmer*, (7 *Barb.* 178,) is one where one Thompson is said to have assigned the note in suit. In that case Thompson, in his examination, says he sold the note, &c., but never was a party to the note. The transaction is spoken of as an assignment, although no point was made in reference to the character of the transfer. The counsel in that case contended that Thompson was the person for whose benefit the action was brought; and, failing in that, that Thompson assigned the note to make himself a witness.

The case of *Hedges* agt. *Sealey*, (9 *Barb. S. C. Rep.* 214,) is of a note transferred by delivering without the endorsement of the payee, and in which the court say the party who took the note is a mere assignee, and not entitled to the rights of an endorsee. Neither of the last two cases can be considered as authority upon the point now under consideration.

In *Willis* agt. *Green*, (10 *Wendell*, 516,) a note was the subject of the action, and that case shows that the view above expressed of the character of the endorsement, is rather that of a designation of the person to whom the money is to be paid, than an assignment of the claim. There the note was a promise to pay A on the order of B & C, who endorsed their names on the back of it. The court held that A was the person to whom

the endorsement was to be made, or to whom the money was to be paid, when endorsed by B & C, and they were held liable as endorsers to A, although the note never belonged to them, nor was transferred by them.

In the last edition of the Code, it is said that one of the judges of this court had held the endorser of a note to be an assignor within the meaning of § 399 of the Code. Upon consultation with my brethren, they both concur in the opinion that an endorser is not to be considered an assignor of a thing in action within the proper meaning of that term. If any such ruling took place, it was at *nisi prius,* before any examination of this section had been made.

We are all of the opinion that the endorser of a note was a competent witness for the plaintiff, and that his examination did not warrant the court below in admitting the defendant to testify in his own behalf.

Judgment reversed.